.Judge Underwood,
delivered the opinion of the court.
In March, 1828, the county court of Campbell, on the motion of the trustees of the town of Covington, established and granted them a ferry across •the Ohio-river, “from the town of Covington, at the pub- *539 lie wharf or landing, on the bank of said river, in said town, to the city of Cincinnati, on the opposite shore, it appearing to the satisfaction of the court, from the evidence that the said trustees have the legal title to-the land along the Ohio river, opposite the said town.” Samuel Kennedy opposed the motion, because, among other reasons, the establishment of a ferry in behalf of the trustees, conflicted with a ferry right previously granted to him, &c. The trustees having succeeded, Kennedy has brought the case to this court by writ of error.
Unsuccessful applicant for a ^appeal to"1 this court,. assign errors ,°ntroducenew evidence to support them; fu/^o«!i-eSS* cannot.
Various questions of importance have been presented. They will be disposed of in order. It was.con-, tended on the part of Kennedy, that he had a right to assign errors of fact in this court, and to introduce new evidence in support of them.
A majority of the members of the court.think he has no such right. County courts had no authority until the passage of the act of 1806, to establish ferries across the Ohio river. There is no provision in the act 1806, or in any subsequent or prior act which sanctions the opinion advanced, unless it be the act of 1798. Upon examination of that act, it will be found, that it allows an appeal to the unsuccessful party, who may be the applicant for a ferry, and'allows him or her to plead matters of fact as wefl as law. The privileges secured by this act, are confined,, by its terms, to the applicant for the ferry, and we know no principle which would sustain us in extending them to the party opposed to the establishment of the ferry, who may be unsuccessful.. Were we to doit, it would be an exercise of legislative power, which is inhibited by the constitution. The case of the trustees of the Jefferson Seminary vs. Wagnon, I Marshall, 243, and II Marshall, 379, has been cited as authority in support of the position,.that Kennedy ought now to be permitted to plead matters of fact. It is true, that the court heard evidence touching the title in that case; but it was not intended, we apprehend, that it should operate further than to test the right of the plaintiffs in error; to prosecute their writ. The report of the case in I Marshall would give it that limitation. In II Marshall, it is decided, that no one is entitled to the grant of a ferry across the Ohio, unless he own the land from which the ferry is established. It *540 Was manifest, independent of the decision of the issue of fact, in regard to the title, that Wagnon did not own the land. The decision must, therefore, have been against him, upon principle, and the only use that ought to have been made, or could' legally have been made of the trial of the issue, was to demonstrate the right of the trustees to prosecute their-writ. We have-been compelled, therefore, to examine this case upon the record alone, without regard to any extrinsic matter. Any fair interpretation given to the order of the county court, establishing the ferry, must'take along with it, the idea, that the trustees of Covington owned the land from which the ferry is established.
Ia establishing a ferry, the record must state such, a case as was necessary to warrant the order of establishment made by the court.
The record presents such a state of case, then, upon its face, as warranted the court in establishing the ferry. If the record had not done so, it would have been error; Lawless vs. Reese, I Bibb, 496. Unless it can he shown, that there is enough apparent on the record to disprove the title in the trustees, which the order states, (having come to the conclusion, that wc cannot now hear -evidence relative to the title, for any other purpose, than to test the interest of a party, in respect to. the prosecution of a writ of error,) it will follow clearly,, that the decision of the county court must be affirmed. The counsel for Kennedy, have, accordingly, laboured to show that there is enough on record to disprove th.e title of the trustees. It may be here proper to remark, that the record does not purport to exhibit all the evidence which was presented to the county court. We shall, however, examine that which was given, and inquire how far it tended to show, that the trustees of Covingfon had no title. The evidence consisted of a deed from Thomas Kennedy to the proprietors of the town; the act of assembly vesling the title to one hundred and fifty acres thereof, in trustees; (V Littell’s Laws, 282,) and a plat or map of the town, acknowledged before the clerk, on the 31st of August, 1815, by the proprietors, and admitted to record. The deed from.. Kennedy does not give the courses, distances, and corner trees of the tract conveyed; nor does it call to bind on the Ohio river. It refers to the land conveyed, as lying at the junction of Licking and Ohio rivers, on the lower side of Licking, being the same land conyeyed by James Welsh to Kennedy, excepting so much as. *541 Kennedy had conveyed to Joel Craig, and consisting also of the land which said Craig, by deed, dated in January, 1809, conveyed to said Kennedy. The land conveyed was estimated at two hundred acres, more or less. By the. act of assembly, one hundred and fifty acres are vested in trustees, for a town. By the explanatory notes constituting part of the map of the town, it is said, that “the surplus or remainder of the purchase or tract of land, after the appropriation of one hundred and fifty acres for the town, is to remain and lie on the western extremity of the tract.” From this, it follows, that all that part of the tract, lying on the east, (the ■junction of the Ohio and Licking, being the most east-wardly part of the tract,) was included in the bounds of the town. It likewise results, that if the tract extended to, and was bounded by the Ohio, on the east and north east, that the town lands would extend to, and bind on the liver. That this is the fact, is rendered highly probable, if not altogether certain, from other parts of the explanatory notes attached to the map. The map lays down Licking and Ohio rivers, and places the town lots, which are marked with appropriate numbers, approximating their junction to the west of Licking, and south of the Ohio, extending up lucking and down the Ohio. It is then declared, that “suchpart of the town as lies between the lots and the edge of the bank of the Ohio river, as will appear by reference to the plat, shall remain for the use and benefit of said town, for a common.” Herd is a plain acknowledgment that the town extends towards the Ohio over Front street, which is but fitty feet wide, to the edge of the bank. It is not then, limited to the edge of the bank. That constitutes the limit or boundary for the common, next to the river, qnd the common is in the town, whilst the town may extend yet further, to low water mark. To locate the one hundred and fifty acres for the town, as described in the act of assembly, and to take it out of the tract of two hundred acres, we should do it in the manner which the plat and explanatory notes show it was done, by beginning at or as near the mouth of lucking, on the lower side, as the survey of the two hundred acres would permit, and running thence up Licking and down the Ohio, for quantity.
Taking the evidence, as exhibited by the record, and it is our opinion, that the most rational inference to be *542 drawn f om it, is, that the one hundred and fifty acres vested by the legislature in the trustees, did bind on the Ohio river. It is sufficient, however, as the exceptions do not purport to give the whole evidence, that it does not appear, that said one hundred and fifty acres do not bind on the Ohio. It may bave been clearly shown, that they did, by proof, before the county court, and ■ which is not before us.
Reservation of all ferry rights by grantor of land does not prevent grantee from obtaining estab, lishment of a ferry on the land. Sueh reservation may constitute grantee a ■ trustee of the ferry, accountable for its profits to grantor.
The notes of explanation state, that “the proprietors reserve to themselves, their heirs, and assigns, forever, all ferry rights, &c.and it is contended,, that this reservation is sufficient to defeat the grant of the ferry to the trustees. If the title of the land, on the Ohio, to the water’s edge, be vested in trustees, any reservation of a use by the proprietors, cannot divest the title. It may show that the trustees have no right to take the profits of the ferry, and apply .them to their use, or to the use of the town, but that they hold the ferry and receive its emoluments for their cestui que trusts, the proprietors. The fact, that such a reservation was made, upon the recorded plan of the ft'wn, rather fortifies the view already taken, that the title, to the water’s edge, was, by the act of the general assembly, vested in the trustees. If the proprietors of the town held a strip of land, between the town and the river, to which the trustees never had title, the reservation of ferry privileges upon the plan of the town, was an useless thing; for there would be no pretext for the trustees or any others, except the owner of the land, to the water’s edge, to assert any claim conflicting with the rights of the proprietors, It does not appear at what time this reservation was first made or announced. There is nothing in the record, upon which the argument can be based, that makes the act of the legislature, connected with this reservation1^ so operate, as to secure the title, on the margin of the Ohio, to the proprietors. From what appears, the reservation was subsequent to the act of the legislature.
The individuals who, as trustees, executed the ferry bond, are entirely different from those in whom the title-to the one hundred and fifty acres was vested, by the act of the legislature.
It has been contended, under the authority of the case of the-trustees of Falmouth vs. Hoster, IV Litt., *543 121, that the individuals who executed the bond, cannot hold the ferry, because it does not appear that they were the successors of the trustees named in the act of the legislature, or that they were appointed in their place, and vested with the title by any competent authority. This a gument would merit a close investigation, if the exceptions had declared that the evidence spread on the record, contained the whole given on the trial. But it may be, for aught that appears, that the tfustées mentioned in the statute have died or removed, and that the individuals who executed the bond, have been legally appointed trustees, and vested with the title by the county court, under the general law concerning towns. The argument, therefore, in the present aspect of the case, is without weight. It is contended, that the' trustees were bound to show, that the land conveyed by Kennedy to Craig, andwhich was excepted in his conveyance to the proprietorsof the tdwn, was located so as to leave them the title to the land, on the margin of the Ohio. If this be conceded, there is nothing in the record which proves they did not do it. We are bound to presume that it was done, if it were necessary, because the court states that the trustees had the legal title to the land, along the river, and nothing appears in the exceptions to contradict it.
Bill of exceptions to opinion of the county court must be sign’d by a majority of the justices who sat on the trial. If, after deciding the. cause, a number of the justices abandon the bench and will not remain to sign a bill of exceptions, such abandonment being stated, * will justify the by-standers in certifying the| bill of excep-' tions. Such conduct, by the justices, is equivalent to a refusal to sign the bill of exceptions. If a bill of ex-ceptionsto judgment of the county court bo signed by less than a majority of the justices who presided on the trial, the case will be decided in this court, as tho’ no bill of exceptions had been taken.
*543 The case of the trustees of Maysville vs. Boon, is a sufficient answer to many of the errors assigned and relied on. It is deemed unnecessary to notice such as are answered by the principles settled in that case.
The view taken has resulted in the conclusion, that the order of the county court, establishing the ferry, must be affirmed. There is, however, a point made by the counsel for the defendants in error, which, if there were no other, would alone be sufficient to prevent a reversal of the order. The bill of exceptions is signed by only two of the justices. The trial took place before eight. The act of 1798, (I Dig., 188,) taken from a Virginia act of 1789, expressly requires, that the Justices, or a greater part of them, shall sign the exception. If they will not, the act of 1793, and of 1800, prescribe the remedy. Now, we are not willing to act upon an exception, signed by two justices out of eight, who adjudicated in the case. To do so, would be to dispense with a part of the act of 1798, without any necessity fordoing it; for if five of the eight would not sign, the *544 plaintiff in error had the right to call upon three bystanders, and to proceed as directed by the acts of 1793 and 1800. If, upon deciding the controversy, a number of tire justices abandoned the bench, and would not remain'for the purpose of signing an exception, we are of opinion* that such abandonment being stated, would justify the bystanders to certify the exceptions. Such conduct on the part of the justices would be highly exceptionable, and would, in our estimation, he equivalent to a positive refusal to sign-. There is nothing, whatever* in the record, which will justify the least imputation upon the propriety of the conduct of the justices who decided the cause. We cannot perceive that they were influenced by any partiality for -the trustees, or any prejudice against the plaintiff in error. We cannot presume that they had any improper motive in withholding their signatures from the bill of exceptions. As then, the number required by law, have not signed, the legal presumption is, that the bill of exceptions was so deficient and erroneous, that they would not sign it. Consequently, the case ought to be decided here, as though there was no exception whatever, signed by any any of the justices.
Ricardson, Mills and Brown, for plaintiffs; Denney, for defendant.
The order of the county court is affirmed, with costs*