## Craig *vs* McBride's Heirs.

### APPEAL FROM THE WOODFORD CIRCUIT.

*Trusts. Subsequent purchasers. Notice. Parties. Pleading.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

In 1835, McBride filed this bill against James Cunningham and John P. Craig, alleging that in January, 1821, he purchased, by executory contract, from W. White, the authorized attorney of Cunningham, the in-

CHANCERY.

*Case 4.*

*December 8.*

Case stated in compl'ts bill.

terest of the latter in a tract of 1,091 acres of land in
Woodford county, patented in 1786, to Anne Cunning-
ham, the mother of said James, for which he was to
pay three dollars an acre for the interest of said James,
in so much of the tract as should be saved from other
claims, and to pay the costs of the suits then depending
therefor in the Woodford Circuit Court; that the inter-
est of said James in the safe land amounted to about 137
acres; that he had made various payments to White on
said purchase, amounting to upwards of $270; and had
paid all costs, expenses, &c., and was ready to pay the
residue of the price; but that White, after said contract
was made, had fraudulently sold and conveyed the in-
terest of James Cunningham in the same land, to John
P. Craig, who he alleges had full knowledge of his pri-
or purchase; and that Craig being in possession, claims
the land, and refuses to convey the title, or deliver the
possession, both of which he prays may be decreed to
him.

Craig in his answer denies notice or knowledge of
*Craig's answer.* McBride's prior purchase; insists that by the terms of
the power of attorney to White, he had no power to
sell the land when he made the contract with McBride,
as no division had then been made between the claim-
ants under Anne Cunningham, and alleging that
McBride's purchase was invalid on that ground; he
says a division had taken place before his own pur-
chase, which therefore was the only valid one. But
while it is true that the power of attorney in terms au-
thorizes a sale only after a division, it does not appear
that any division had been made at the date of either
purchase.

In an amended answer, Craig again relying upon the
*A purchaser ac-* fairness of his own purchase, and his ignorance of the
*knowledging a*
*prior purchase* prior one when he made payment and obtained the deed,
*holds in trust for* alleges that one John Craig had been the locator of
*the first purchas-*
*er.* Anne Cunningham's claim, and as such entitled to a
portion of the land; that under his claim as locator, he
had many years before, (in 1787,) taken possession of a
specific part of the tract as his own, which possession
had been transmitted to himself, the present defendant,

and that he had purchased from White, in order to quiet the title and protect his possession; and he alledges that the purchase of McBride was champertous, &c. The locator's claim is not made out by the evidence, but it appears that John P. Craig and his father, Lewis Craig, had been in possession of the land in contest, for some years before the purchase of McBride, and that this possession was taken under the title of Anne Cunningham, or those claiming from her, and not adversely to them; but by what right, if any, on the part of the Craigs, does not appear, except by a vague statement that Lewis Craig took possession as agent of Cunningham's heirs.

Upon the question whether J. P. Craig had notice of McBride's contract with White before his own purchase, several witnesses, and among them White himself, depose unequivocally to the fact of notice; and although there are some circumstances which detract from their credit, there are others which render it probable that he had notice. The effect of such notice, supposing it to be established, was to subject the title, if any conveyed to J. P. Craig, to such equity as McBride had acquired or might acquire, against James Cunningham, by and under his prior contract with White as the agent of Cunningham. If this contract was not binding upon Cunningham, it conferred no equity as against him, and gave no right to relief against Craig, whether he had notice or not, and whether White's conveyance passed Cunningham's title or not. But if Cunningham was bound by the executory sale to McBride, the latter acquired thereby an inchoate equity against the former, with the right to perfect it by the performance of the contract on his part, and upon doing so, to have a conveyance of the title, which was subject to this equity, whether it remained in the hands of Cunningham, or passed to a subsequent purchaser having notice of it.

Assuming, then, that Craig had notice, McBride's equity against him was dependent upon his equity against Cunningham, and coextensive with it. The real object of the bill was to obtain a specific enforcement of the contract made with White as the agent of

The proof of Craig's notice of McBride's contract for the land.

A purchaser seeking a specific performance and a conveyance of title must show performance of his part of the con.

tract and pay-
ment of the con-
sideration accor-
ding to his under-
taking. In such
case, if the sale
be made by an
agent, the prin-
cipal or his heirs
if he be dead and
personal repre-
sentative, are
necessary par-
ties.

Cunningham, by compelling Craig, who is alleged to have acquired the title in fraud of the complainant, to surrender to him the title and the possession. If Cunningham had in person made the contract with McBride, and also the subsequent conveyance to Craig, still McBride would not be entitled to the relief sought, without completing payment according to his contract, either to Cunningham or to Craig, who might, if he had made full payment, be entitled to receive the price from McBride, so far as it had not been paid to Cunningham. Even in that case Cunningham, or since his death, his representatives should be a party or parties in the suit; and much more, when the contract and deed were both made by White, as attorney for Cunningham, under circumstances which, according to the letter of his power, did not authorize a sale; and when it does not appear that Cunningham himself had ever, in fact, received any part of the price paid by either of the purchasers, but the contrary may be presumed, if indeed it be not certain. Cunningham was a necessary party, entitled to make a question as to the validity and extent of the payment to White, and to insist on full payment, or to question the validity of each of the sales, either on the ground of want of authority or of good faith, and his representatives, since his death, have the same right and interest.

, The suit is defective in form and preparation, inasmuch as there is no sufficient evidence of the due publication of the order for the appearance of the five persons named as the heirs of James Cunningham, in the bill of revivor suggesting his death, and in the warning order and traverse afterwards entered, the name of John Cunningham, one of the five, is omitted, without the suggestion of any reason for the omission. We are of opinion also, that the personal representative of James Cunningham, if there be any, should have been a party.

But there are still other parties who should have been before the Court, before the complainant's, however perfect his equity might be against James Cunningham, could have been entitled to the specific relief for which he prays, and which was granted by the decree for the

conveyance and surrender by Craig, of the specific tract of 108 acres held by him.

It appears that Anne Cunningham, the patentee, left nine children, to seven of whom, including James, she had devised this tract of 1,091 acres, James having previously transferred his own seventh part as a devisee, claimed at the time of the sales now in question, the interest devised to him by one of his sisters, who was one of the seven devisees of the patentee, and also an interest by descent from two brothers, also devisees of Anne Cunningham, who had died intestate without children. The pleadings do not state what had become of the various devisees or of their interests. But it appears by the testimony, that before the sale to McBride, five of the devisees had died without issue, of whom two had at some time disposed of their interests, and a third is said to have done so. The interests of the two others had descended to all their surviving brothers and sisters, including the two who were not devisees. Of these two, one had died leaving children before the sale to McBride. The other five decedents left no issue. It appears by various deeds contained in the record, that McBride had acquired title to the interests of three of the devisees, and also of the two children of the patentee who were not devisees, but heirs of devisees, said to amount in the aggregate to four-sevenths, and he claims as the interest of James, one-seventh, as held under the will of his sister, and the half of one-seventh as derived by descent from the two deceased brothers above referred to, making in all five-sevenths, and the half of one-seventh. The remaining seventh and half seventh, are still outstanding, in the hands, as it is said, of different persons, claiming by deed from one of the original devisees, and from one of the heirs of the two deceased brothers before referred to.

Conceding that the facts are as above stated, still as there was no division among the parties holding these joint interests, and it is not even alleged that the other parties entitled are in possession to the extent of their respective interests, it is apparent that the holders of these outstanding interests were necessary parties to

CRAIG
*vs*
McBRIDE's H's.

any proceeding by which a distinct portion of the tract should be appropriated to McBride, claiming only a joint interest with others. The form of the suit is defective in this respect, as none of the outstanding interests are brought before the Court; and indeed, the pleadings do not show the extent of the interest held by McBride.

Where there is a defect of parties it is not proper for the Chancellor to decree a conveyance to a purchaser and oust one in possession of land though he may not have any title or right to the possession.

In consequence of the defect of parties above pointed out, we do not deem it proper to decide upon the merits of the case. But we suggest: 1st, That as it is entirely obvious that McBride has not paid to Cunningham, or any one for him, the entire price of three dollars per acre for his interest in the safe land—nor even three dollars an acre for the 108 acres in possession of Craig, it was improper as against Cunningham or his heirs, and without their consent, to decree a conveyance even to the extent that payment had been made, unless it appeared that the entire right or interest of Cunningham was exhausted by such conveyance, whereby a partial enforcement of the contract might be rendered proper. And 2nd, That as it appears by the report of the commissioner, that the quantity of safe land in the tract of 1,091 acres is about 780 acres, of which five and a half sevenths is about 612 and five-sevenths acres; and as it also appears by deeds accompanying the report, that McBride had already sold, in virtue of his claim to five and a half sevenths, 548 acres and a fraction, and conveyed the same by deed with general warranty, under which it is understood to be still held, it is apparent that by the decree for 108 acres in addition, he obtains about forty four acres more than he is entitled to in the entire tract, if his equity to James Cunningham's entire interest were perfect. And as it hence appears that he has already sold and conveyed more than his proportion of the residue of the tract, it follows that conceding Craig to have no title whatever, to retain any part of the tract as against the proper claimants under Anne Cunningham, still McBride has no exclusive equity to this tract of 108 acres, but it should be so disposed of as to equalize all the parties actually entitled, for which purpose those parties should have been before the Court.

Whether Craig has, independently of his purchase from White, any right to hold as against the proper claimants under Cunningham's patent, we need not decide. Even if he has not, he has a right in equity to hold the possession until some party appears who is entitled to it. And whatever might have been the case if he had acquired the possession under his purchase from White, it does not follow that if he is bound to surrender to McBride the entire title acquired by that purchase, he is also bound to surrender to him the entire possession which he had before the purchase.

With regard to the nature and effect of the decree of 1842, which if final, cannot be reached by the appeal taken to the last decree rendered in 1847, we remark that it decides nothing more than that McBride acquired an equity to the interest of James Cunningham by his purchase from White, and that Craig having purchased afterwards with notice of the prior purchase, held the title acquired by that purchase subject to the prior equity of McBride, and in trust for him. But it expressly left open the question as to the extent of James Cunningham's interest, and of the payments made by McBride. It decided as against Craig, that McBride's contract with White was binding on James Cunningham, but it did not decide that any of the payments were so, nor that McBride was entitled to a conveyance beyond the amount of his payments. It did not preclude Craig from contesting the extent or validity of the payments made by McBride, nor from showing that by his sales and conveyances and the possession held under them, he had already realized more of James Cunningham's interest than he had paid for, and that his equity being complete to that extent only, any conveyance of title which he could then require, should be applied to cover the possession of the land which he had already sold, and not to gaining the possession of land for which he had not paid. Assuming the safe land then to be 780 acres in the whole tract, which would make James Cunningham's interest of one and a half sevenths equal to 167 and one-seventh acres, and would make McBride's four-sevenths acquired from other parties, 445 acres and

*(margin, top right)* CRAIG  
*vs*  
McBRIDE's H's.

*(margin)* The decision of the court that an equity existed and a trust without deciding as to the extent of the equity—should permit the pleadings to be so amended as to show the extent of the equity, and especially by the introduction into the pleadings of deeds and such other evidence.

five-sevenths of an acre, it appears as already stated, that he has sold and conveyed 548 acres, which require 102 acres and two-sevenths of an acre from the interest of James Cunningham—and this is more than, either by his bill or the commissioner's report, he has paid for. He is not entitled, as against any body, to a conveyance of more land than he has paid for. And if he were entitled to a conveyance of 102 acres and two-sevenths of an acre, he could not say, and a Court of equity should not say for him, that it should not be applied to the land which he had sold under his equitable claim. to James Cunningham's interest, and to the protection of his vendees; but equity would place it there, unless the interest of other parties interested, required a different disposition of it.

The decree of 1842, in deciding that Craig purchased with notice of McBride's prior purchase, and subject to his equity and in trust for him, does not decide that the trust is more extensive than the equity, or that it shall be executed further than the equity is complete. But in directing the enquiry as to the extent to which the equity had been perfected, it shows that the trust was to be enforced only to that extent. There was nothing, therefore, in that decree, to preclude Craig from setting up, as he offered to do in an amended answer, the fact that McBride was in possession of, or had sold more land than he had acquired by his contract with White. He had, in fact, acquired more than he had paid for. We are of opinion, therefore, that the Court should have permitted this amended answer to be filed, whereby the facts appearing by the commissioner's report and the deed accompanying it, which are referred to in the answer, might have been presented in the pleadings, and have been thus made the proper basis of a decree. Upon those facts as already stated, the complainant, as the case now stands, appears to have no equity to any part of the 108 acres occupied by Craig. But as from a defect of parties, the suit was not in a proper state of preparation for a final decree, it cannot be now finally decided upon the merits.

Wherefore, the decree is reversed for the want of proper parties, and the cause is remanded, with directions to dismiss the bill without prejudice, unless upon leave of the Court, the proper parties as above indicated, shall be brought into the suit.

*Hewitt* for appellant; *Woolley & Kinkead* for appellees.