## WILSON, ET AL. *v.* SHIVELEY.

TIDE LANDS—TITLE TO—RIGHTS OF SOVEREIGN IN.—Where land is submerged by the gradual advance of the sea, the sovereign acquires the title to the part thereby covered with water.

IDEM—RIGHTS OF ABUTTING PROPERTY OWNER.—The owners of property abutting on tide land may purchase the tide land belonging to the state, and lying in front of the lands owned by them. Sess. Laws 1872, p. 129; Sess. Laws 1874, p. 77; Sess. Laws, 1876, p. 70. And when a patent to the tide lands has been issued to a person fraudulently claiming to be the owner of abutting property, upon discovery of the patent will be cancelled, and the land conveyed to the owner of the property abutting on the tide land.

APPEAL from Clatsop County.

*Fred. R. Strong,* for appellant.

*Sidney Dell,* for respondents.

By the Court, LORD, J. :

This is a suit to have decreed the legal title held by the

defendant, Shiveley, to block 11 in the city of Astoria, to
be in the plaintiffs; to have the state patent to block 139,
which is tide lands, and alleged to have been procured by
fraudulent representations from the state by said Shiveley,
canceled and annulled; and to compel a conveyance of the
title held under the patent of the defendant, Shiveley, to
the plaintiffs.   Substantially, the facts are that in 1844 the
defendant, Shiveley, surveyed and laid out the town of
Astoria, in which block 11 is included.   At that time, the
land claim upon which the said town of Astoria was laid
out, was their joint occupancy of said Shiveley and one
Welch.   In April, 1845, the said Welch executed to the
defendant Shiveley a power of attorney to bargain and sell
any lot or lots owned by said Welch and Shiveley jointly,
in the town of Astoria, and that, pursuant to said power of
attorney, the said Shiveley did, for himself, and as attorney
in fact for the said Welch, on the third day of June, 1845,
execute to one Gen. John Wilson a deed of said block 11.
On the twenty-fourth day of January, 1866, a patent from
the United States was issued for all of said lands so originally
and jointly occupied and possessed by the said Shiveley and
Welch, to the said Shiveley and Susan, his wife,—the west
half thereof, embracing said block 11, being set off in said
patent to the said Susan Shiveley; that on the seventh day
of March, 1871, Shiveley and Susan, his wife, conveyed said
block 11 to one Milton Elliott, for a division and settle-
ment, and on March 8, 1871, the said Elliott conveyed said
block 11 to John M. Shiveley, whereby it is claimed that
the title to said block inured to the benefit of the said John
Wilson.   Subsequently Wilson died, and the plaintiffs are
his heirs.   Block 11 is situated on the banks of the Co-
lumbia river, and block 139, which is tide land, lies imme-
diately in front of it.

It is alleged that the said block 11 abuts and fronts upon the shore of the said river at ordinary high tides, and extends the whole width of the tide lands embraced in block 139; that the said Shiveley, well knowing the title of the said John Wilson in block 11, and without any notice as required by law to him, in May, 1876, made application to the board of school land commisioners for the purchase of said tide lands in front of block 11, in which is included block 139, and in which he fraudulently concealed the fact of the title and ownership of the said Wilson, and by means of fraudulent suggestions of title in himself and fraudulent concealment of the title of said Wilson, procured to be issued to him the state patent to said tide land included in block 139; wherefore the plaintiffs claim that said patent to said tide land ought to be cancelled and annulled, and the fee decreed to be in plaintiffs.

The defense is that on June 3, 1846, and at the date of the United States patent, said block was entirely above ordinary high-water mark of the Columbia river; that between block 11 and the tide land of the river there were other lands, owned by the defendant and his wife; and that since June 3, 1846, and since the United States patent, the waters of the Columbia have been gradually encroaching upon the high land forming the bank of the Columbia in that portion of Astoria in which block 139 is situated, and ordinary high tide has moved south, and nearer block 11 than it was in 1846 and 1866. Whether there existed a strip of land in front of block 11, as alleged and claimed, the evidence is by no means clear or satisfactory.

If for the purposes of this case, its existence shall be conceded, the evidence shows that the advance of high-water mark has brought it within the ebb and flow of the tide. When land is submerged by the gradual advance of the sea,

the sovereign acquires the title to the part thereby covered with water. *In re Hull & S, Ry. Co.* 5 Mees. & W. 327, the doctrine is laid down that "if the sea, or an arm of the sea, by gradual and impreceptible progress encroach upon the land of the subject, the land thereby covered with water belongs to the crown." There is in all such cases, where land is thus situated and contiguous to the sea, as the court say in *Trustees, etc., Town East Hampton* v. *Kirk*, 84 N. Y. 218, the possibility of gain or loss, to which all riparian owners are subject. They would be entitled to whatever should be gained from the sea by alluvion or dereliction, and their title was liable to be lost by the advance of high-water mark, so as to bring the strip reserved within the ebb and flow of the tide. So, too, in *Mulry* v. *Norton*, 29 Hun, 660, the court say: "Where land is overflowed, and the advance of the sea is so slow and gradual that its progress is impreceptible, the sovereign acquires the title to the part of the shore submerged." So that if it be conceded that there was a strip of land intervening originally, as claimed, it is clear from the evidence that the title to it has been lost by the gradual encroachment of the sea submerging it. The state, as sovereign, owned the tide lands, and had the absolute right to dispose of them.

By virtue of the act of 1872, and those amendatory thereof, the owner or owners of any land abutting or fronting upon or bounded by the shore of the Pacific ocean, or of any bay, harbor or inlet of the same, and rivers and their bays, in which the tide ebbs and flows, within the state, were given the right to purchase all the tide lands belonging to the state in front of the lands so owned, within a certain time and upon conditions named. See. Sess. Laws 1872, p. 129; Sess. Laws. 1874, p. 77; Sess. Laws 1876, p. 70. In consideration of the fact that the people had acted upon the

supposition that prior to 1872 the bank-owner was the owner of the tide land, it was provided in such cases, where the bank-owners had actually sold the tide land, then the purchaser of the tide land from the bank-owner, or a previous bank-owner, should have the right to purchase from the state. (*De Force* v. *Welch*, 10 Or., 507.) But the case at bar presents no such question, as there was no such sale. The act gives right to purchase to the abutting owner or owners, and if block 11 did abut on this tide land in question, then the plaintiffs were within the terms of the act, and entitled to purchase as such abutting owners.

Without entering into detail, it is sufficient to say that a careful examination of the facts has satisfied us that block 11 was the abutting block to the tide land in dispute, for which the defendant has obtained the patent. And our view in this regard is strengthened by the fact that the defendant founded his application for this tide land as appurtenance to block 11, and obtained the patent upon this representation.

The plaintiff's title to block 11 being admitted, and the evidence satisfying us that it is and was adjacent to the tide lands in dispute, we find no error in the decree of the court below, and the same must be affirmed.