## AGREEMENT MADE BEFORE MARRIAGE TO CONVEY LAND.

### Common Pleas Court of Defiance County.

### LOLA W. ROHN v. CHARLES D. LEACH ET AL.*

#### Decided, 1922.

*Statute of Frauds—Not a Bar to Conveyance of Land in Pursuance of a Parol Agreement—Dower does not Attach where Marriage Occurred Subsequent to such Agreement—Warrantor may be Let in to Defend.*

1. A warrantor is properly made a party on his own application, to defend his warranty in an action by a widow for the recovery of dower in land.

2. Such person may file his answer and cross petition setting forth all defenses he may have to the plaintiff's claim.

3. A contract for the sale of lands not evidenced by any memorandum in writing as required by the statute of frauds, made before marriage and voluntarily consummated after such marriage, is a bar to dower, although the wife did not join in the deeds or know of their execution.

4. The statute of frauds is a rule of procedure and not of property, and does not prevent parties from conveying their titles pursuant to parol agreements of which it might have prevented the specific performance.

5. Dower is dependant upon the husband's estate, and where he is bound in conscience to convey·his land after marriage because·of an agreement previously made, and does so in good faith, his deed relates to the time the agreement was made and dower does not attach.

EASTMAN, J.

On January 15, 1921, the plaintiff filed her petition in this case, the substance of which is that she was married to Frank H. Rohn, now deceased, on the 17th day of December, 1890, at Hillsdale, Michigan; that prior to said marriage said. Frank H. Rohn was the owner of. the west half (1-2 of the west half (1-2) of section fourteen (14), town four (4) north, range five (5) east, containing 160 acres; also the northeast corner (1-4)· of

*Affirmed·by the Court of Appeals, February 9, 1923.

the northeast quarter 1-4) of section fifteen (15), same township, containing forty acres, in all two hundred (200) acres, and now owned by Charles D. Leach, the defendant in this case.    She further alleges that he was the owner of said land at the time of said marriage; that she never conveyed, or in any way transferred her right of dower in said lands; that Frank H. Rohn died on the —— day of June, 1920, at Chicago, Illinois; that she was born in Elkhart county, Indiana, on the 11th day of March, 1873, and that she is now in good health, without mental or physical disability; also that Annie Leach is the wife of the defendant, Charles D. Leach, and prays that dower be assigned to her in said two hundred (200) acres of land.

To that petition the defendant Charles D. Leach filed an answer, and afterwards an amended answer and cross-petition; and the latter admits that Frank H. Rohn was at one time the owner of the lands described in the petition; that this answering defendant is now the owner in fee simple, and in possession thereof; that he acquired title as heir at law of John W. Leach, late of Defiance county; that he is grantee in deeds of conveyance from the widow, and all of the other heirs at law of John W. Leach; also that he is grantee of other persons who acquired title in fee simple to said lands, by deeds from Frank H. Rohn, and others; also admits that John W. Leach acquired a fee simple title to said lands from Frank H. Rohn, and from the grantee or grantees of said Frank H. Rohn, also that Anna Leach is his wife, save and except the following admissions, he denies each and every averment contained in said petition.

For a second defense he pleads that in the early part of the year 1890 said Frank H. Rohn sold to John W. Leach the west half (½) of the west half (½) of section fourteen (14), described in the petition under a contract, and under the terms of that contract John W. Leach was given full and complete possession of the premises at the time of making such contract, and that from that time until after the decease of said Rohn said John W. Leach was in full possession of the premises so purchased by him; that about the month of November, 1890 said Frank H. Rohn sold to John Spangler, now one of the defend-

ants in this action the east half (½) of the northeast quarter (¼) of section fifteen (15), and delivered to him complete and actual possession of the said premises, and that he continued in full possession thereof from November, 1890, until March 29, 1897, and then sold and transferred the north half (½) of the same to Francis Shoup, and that said Shoup continued in possession until April 13, 1906. He also pleads that from the time of the said purchase until the present he and those under whom he claims have had absolute, open and exclusive possession of all of said lands; also pleads that in November 1890, John Spangler paid to said Frank H. Rohn, a part of said purchase price and then and there agreed to pay the balance as soon as the title to said premises should be perfected; that about the 25th day of April, 1891, the title to said premises having been perfected to the satisfaction of said Spangler, Frank H. Rohn executed and delivered unto him a deed of general warranty, and conveyed the same to him, free of all incumbrances, except the mortgage thereon, which was assumed by said Spangler, as part of the purchase price, and recited in said deed, that he was an unmarried man, and he further says that if it be true that on December 17, 1890, the plaintiff was married to said Frank H. Rohn, the sale of the west half (½) of the west half (½) of said section fourteen (14), to said John W. Leach was made a long time prior, to-wit: six months or more to the date of said marriage, and that he had been in absolute and actual possession during the whole period, also that if it be true as averred that the plaintiff and said Rohn were married on December 17, 1890, the sale of said east half (½) of the northeast quarter (¼) of section fifteen (15), by said Rohn was consummated thirty days or more prior to such marriage, and that said Spangler had been in open, absolute and complete possession of said east half (½) of the northeast quarter (¼); that by reason of the facts plaintiff has no right, title or interest in the premises in her petition described, by way of dower or otherwise.

For a third defense he alleges a series of transactions upon which he claims an estoppel against the plaintiff, and the evidence not being in the opinion of the court sufficient to sustain

the essential part of said allegation, it is not necessary to recite them at length.

Subsequent to the service of summons on the defendant, Charles D. Leach, a notice was served on John Spangler, the purchaser of forty acres of the land described in the answer and cross petition of said Spangler from Frank H. Rohn, deceased, and he was required to make a defense on account of his warranty of the title to said forty acres, which was transferred to the defendant, Leach through other people, and on April 30th, 1921, by leave of court he filed his answer, the first defense of which is a general denial of the allegations contained in the plaintiff's petition. The second defense pleads the contract of purchase, the completion of the title, and the transfer of the land to him, subject to the mortgage of William E. Moll, for eight hundred ($800.00) dollars, which he assumed as a part of the consideration for the conveyance and he also alleged that he paid at the time of the bargaining for said lands the sum of $500.00, and took a written receipt or memorandum therefor. He also alleged that the title was not at that time satisfactory, and he requested that it should be corrected and perfected before paying the balance of the purchase money, and that on April 25, 1891 said Rohn executed, acknowledged and delivered to said Spangler a general warranty deed for said premises, the title having been perfected, and that he assumed the mortgage to Moll, which was dated March 18, 1891, as a part of the purchase money; and recited that at the time he contracted for said land, Frank H. Rohn was an unmarried man, and that at the time the deeds were executed to himself for the land, and to Moll for the loan of $800, he recited that he was an unmarried man.

For a third defense he sets up facts which he alleges to be such acts as would work an estoppel against the plaintiff, and bar her right to have dower assigned in the premises. The evidence not being sufficient to sustain the material acts pledged it is not necessary to recite the allegations at any length.

To those answers and cross petitions the plaintiff has filed replies, which are general denials.

On January 31, 1922, this case was heard upon these pleadings, and the evidence submitted by the parties, and by request of the attorneys on both sides time was given for the preparation of briefs. Those briefs have been filed, and all of them are very elaborate, and exhaustive of the questions presented therein.

The facts presented by the evidence are elaborately stated in the several briefs and especially in those filed by the attorneys for the plaintiff. It will not be necessary to review the testimony at length, and no attempt will be made to do so, but there are a few conclusions which I have derived from the numerous transactions described by the parties, and the testimony of the several writings presented, which are essential to make clear the principles involved in the case, and are briefly as follows:

In the Summer of 1890, Frank H. Rohn was owner of the lands described in the petition filed in this case; that he had the same rented to his brother-in-law who was living on said land; that during that summer he was bargaining with John W. Leach, the father of Charles D. Leach, who is now the owner, and John Spangler, who died since this action was commenced, and his executors have been submitted in his stead. He and his executors defend on account of his warranty of the title, now owned by the defendant Charles D. Leach of the forty acres, Leach having the other 160 acres through his father by inheritance, and through deeds from his brothers and sisters and mother for the sale of these lands, the 160 acres to John W. Leach, and the 80 acres in Section 15 to John Spangler, the north half of which is the forty acres in question. During the time of said bargaining he placed the said John W. Leach in full possession of the 160 acres, and the said John Spangler in full possession of the eighty acres. He received a part of the purchase money from Spangler at least, and the circumstances indicate that he must have received from said Leach a part of the purchase price for said 160 acres, although the evidence is not clear, as to that particular item. He employed Judge Hay, after his bargaining with Spangler, to per-

fect the title, and make an abstract thereof for the eighty acres. Upon the evidence as presented, the court is justified in finding that Leach took absolute possession of the 160 acres; that he bought and never relinquished the same until his death, when it descended to his heirs; that he not only took possession but the tenant, brother-in-law of Rohn turned over to him all of the rents and profits belonging to the landlord for that year, and that he made improvements of various kinds during the summer and fall and planted a crop of wheat, the proceeds of which went into his grainery the next year.

Durham, the tenant, had a right to another year on the land, but testifies that at the time of the bargain he turned over his right to the purchaser. The evidence fairly justifies the claim that Rohn never exercised any authority or dominion over any of the lands from that time to the present.

The evidence is not very clear as to whether Durham had the eighty acres of which the forty is a part rented or not, but it being adjacent to the 160 acres and he residing nearby, and being a brother-in-law to the owner, and the owner exercising no authority over it, it is fair to presume upon that evidence that he did. Upon dealing with Spangler for the eighty acres, it appears from the evidence that Spangler built his share, 80 rods, of line fence between sections fourteen and fifteen about the same time that Leach constructed the other 80 rods, so that the 160 acres could be pastured by Leach's live stock.

The right to use the evidence of John Spangler, in the effort of the defendants to prove the contract of sale, is persistently questioned by the plaintiff's attorneys, upon the theory that because he is a party making a defense against one who claims under a deceased person, his testimony is not competent. Much doubt exists as to how far the testimony of the party in that position can be received. A part of his statements are inadmissible beyond a doubt under the statute which precludes a party under such circumstances, and I should feel constrained to reject the remainder, were it not for the fact that the attorneys for both the plaintiff and the defendants have quoted from and used the same testimony in their arguments. Mr. Harris' brief

for both the plaintiff and the defendants have quoted from and used Spangler's statements as though they had not been questioned, and the brief of Vail & Simpson for the plaintiff also quotes those statements at length on page 11; and at other places argues upon the statements contained therein. Upon this situation it would be unfair to exclude the testimony, and we are of the opinion that such use of it waives the objections if the objections were well taken.

There is no doubt but that the plaintiff would be entitled to have dower in these lands, if they were not sold before the 17th day of December, 1890, at the hour of the marriage ceremony, but if they were sold even on the same day before the marriage was consummated then Frank H. Rohn did not own such an estate as would entitle her to a dower. Strong arguments are made by both firms of attorneys for the plaintiff, that neither of the contracts for the sale of the two tracts of land was so far consummated as to pass the title, either in law or in equity, until several months after the marriage, and these arguments are made upon the theory that a contract which would be sufficient to bar the dower must have been such as could have been enforced by an action for specific performance.

It is conceded, however, especially by Mr. Harris, that a contract duly made before the marriage and consummated afterwards by the final conveyance would carry the entire estate free of dower; otherwise it would not. In other words the arguments of both counsel for the plaintiff are based upon the theory that a contract for the sale of land, not in writing is void under the statute of frauds. So far as investigation has enabled me to reach a conclusion on that subject, only four states of this Union have gone far enough to so hold, and we have even seen the theory questioned in one of them. Such a requirement has never been held in Ohio. The statute of frauds establishes a rule of procedure, and not a rule of property. It therefore excludes parol testimony for the establishment of a contract for the sale of real property. It is frequently argued that because it excludes any testimony except the writing, it therefore renders the contract void; such is not the case, but it does make proof

of a contract not in writing under the requirements of that statute very difficult.

Part performance such as delivery of possession and payment of purchase money, or part thereof, making of valuable improvements have. always been held to remove the difficulty of the proof of contract prescribed by. the statute of frauds. It is doubtful in the present case, if either Leach or Spangler could have enforced specific performance of their arguments on the 17th day of December, 1890, by actions in court, if they had attempted to do so, but all of the circumstances surrounding the parties at the time, together with the actions of Frank H. Rohn concerning these lands, plainly indicate that he considered himself under a moral obligation to complete the arrangement he had entered into; permitting Leach to take the rents and profits for the same year, is inconsistent with the theory that Leach might have been in possession as tenant or otherwise, except as purchaser, and the action of Spangler in constructing fences without objection, together with the reputation in the neighborhood of the sale of those lands to Leach and Spangler, the action of Rohn in employing an attorney to perfect his title, and his execution of deeds afterwards containing a recital that he was a single man drive us to the conclusion that he was holding the title to those lands to be transferred to the purchaser upon payment of the balance of the purchase money, and afterwards permitting the same to be paid, and delivering those deeds establishes the fact beyond a doubt.

The circumstances of the marriage were very peculiar. In the very early hours of the morning of December 17, 1890, Frank H. Rohn, and the plaintiff boarded the train at Defiance, landed at Hillsdale, Michigan, had their marriage ceremony performed, remained there until sometime the next day, went from Hillsdale to Goshen, Indiana, remained there a day or two, and he without letting his marriage be known returned to Defiance, and on the 20th day of the same month signed his petition to quiet the title to the land sold to Spangler, she remaining in Goshen, and no one about Defiance except Rohn himself, knowing anything about this marriage for seventeen or eighteen years, and

she testifies that he went back to Goshen once in two or three weeks, and then returned to Defiance until after the time his deeds were made. The statements of his ownership in his petition, notice and decree and also of his deeds, bound nobody but himself.

Whatever estate the plaintiff could have in his lands is a part of and must be derived from the estate of Frank H. Rohn, and could not arise in any other way. If he was under an obligation to convey these lands before marriage, and afterwards chose to do so, accepting the purchase price, this conveyance carried her title, because that obligation prevented his estate from being an estate of inheritance at any period during the coverture.

The case of *Kling, Admr. v. Bordner*, 65 O. S., 86, is cited as an authority against this proposition. That was an action to enforce specific performance, or its equivalent of a contract for a will in lieu of services. The amended petition declares on two distinct contracts which created the same obligation, one arose from the act complained of by the plaintiff of a letter written by her son which was construed by the pleader to be a written contract to give by will or otherwise all the estate, real or personal, except enough to pay debts, and the other was entirely a verbal agreement to the same effect, the consideration being the same, that is that plaintiff should attend, nurse and care for the decedent as long as she lived. The breach alleged was failure to either give or will the property, and it is clear no recovery could be had on both for a recovery on either would exhaust the subject and preclude the other. This was not a case of part performance, it was never completed by the parties themselves. The case under consideration was completed by the parties who entered into the arrangements. Does the memorandum comply with the terms of the opinion of Williams, Judge on pages 99 and 100? The letter of Bordner does not contain a promise to transfer by will or otherwise. It is a promise to be complied with in the future, not an agreement binding the estate, and it is not definite. It is the expression of the writer's own expectation. The parol agreement shows the parties did not understand the letter to be more than to make it right with the plaintiff, and the remedy was for services.

The case of *Landt* v. *Parchman*, 7 App., 164, was a case brought to recover commission for a sale which the purchaser refused to complete. The contract was held not enforcible. The receipt was for $50 earnest money, contained no description or state when possession was to be given, and it was repudiated by the vendee, and the suit was brought by the broker for commission.

It is insisted that John Spangler denies possession of his forty acres on page 6, question 33, of his deposition. Plaintiff objects to the question about "When did you take possession?" and the answer, "I think it was that same winter I got it," and at the same time uses the question and answer in argument to defeat the claim of possession. She can not both use it, and exclude it, but it is too indefinite to form any conclusion which would contradict the statement of other witnesses, that he had been on the land at the same time, or near the same time at which Leach constructed the line fence and the reputation of his ownership in the neighborhood even before that time.

Even possession would not be required in a case where any part of the purchase money had been paid as in this, and afterwards the party executed and delivered a deed for the premises, because an oral promise is just as good as a written one, when the party does not choose to refuse compliance with it, and it being a matter of conscience, a court of equity will hold it good after the statute has been so far complied with, by the execution of a deed, and the effect of the deed would relate back to the time of the original payment. In such case as this the proof of possession need be but slight. The plea of the statute of frauds is a personal one, and can not be used by anyone, except the purchaser himself, or in such cases, the vendor, but neither of the parties chose to rely upon it in this case, but did complete their agreement, and it became consummated in the deed.

In the case of *Wilber* v. *Payne*, 1 Ohio, 265, the court says, "Possession is as good as writing, making improvements also is an element to be considered. Possession and improvement takes the case out of the statute of frauds." If after equitable rights

accrue and the grantor marries, the wife acquires no dower. See *Hukins* v. *Hukins,* 18 Atl., 655.

In *Greene* v. *Greene,* 1 Ohio, 542, the court says the widow's estate is a part of her husband's estate. and her interest only attaches where he owns a real beneficial interest in the land. A technical seizin is not enough.

In *Melton* v. *Lane,* 29 Okla., 383; 118 Pac., 141. This was a suit to enforce ancestor's debts, no dower attaches. The court says the wife's dower is likely to be defeated by every claim or incumbrance in law or equity, existing before the inception of her right, which would defeat him, as a sale contract, marriage afterwards, then a deed, she would have no dower.

1. Scribner on dower, Chapter 28. Any effectual alienation prior to marriage prevents dower from attaching. Paragraph 15, Dower is liable to be defeated by every subsisting claim of law or equity existing before the inception of her right, and which would defeat the husband's right.

In the Oklahoma case above cited, if the man makes a contract before marriage for the sale of land, and then marries he is regarded as a trustee for the purchaser, and if the conveyance be made during coverture, on execution of the contract the purchaser takes the estate discharged of dower.

In *Fountain* v. *Dunlap,* 82 Ky., 321 and 324, in the opinion of the court it says:

"It has been held, that if a man before his marriage sells his land even by parol, and then conveys after marriage, upon his death the widow is not entitled to dower."

In *Chapman* v. *Chapman,* 92 Va., 537, 24 S. E. 225, the court says under the head of "Dower." If lands are sold by an unmarried man, his subsequent marriage does not create any right to dower therein, though they are not conveyed until after the vendor's marriage. His conveyance passes a perfect title, notwithstanding his wife refused to join therein, or that the purchase money is not paid until after the marriage.

In the case of *Matigan* v. *Walsh,* 22 Wis., 501 cited as establishing a contrary proposition: In this case there was a parol agreement, but no part performance. It is also to be noted that

the statute of frauds of Wisconsin is considered, as a rule of property, and not of a procedure.

In *Given* v. *Clark*, 7 Ky. Law Rep., 29, a contract not in writing, but partly performed leaves the estate free of dower. This case was approved in the case of *Gains* v. *Gains*, 48 Ky., 9 B. Monroe, 298.

In *Scott* v. *Scott*, 10 Ky. App., 25, a verbal contract for sale of land, where the purchaser is put in possession is voidable only by the seller, and where a father sells to his son, and puts him in possession, but does not convey to him, and afterwards marries, his wife has no right of dower in such lands, where the husband has not sought to avoid the sale.

14 Cyc. 944 and 923 and 924 "Dower is subject to all liens and equities, existing at the time of marriage, whether she had notice or not.

The Statute of Frauds, Sections 8620 and 8621 General Code, is a rule of evidence, and not of property. It is personal to one of the immediate parties. A parol contract is not void, but voidable. *Lefferson* v. *Dallas*, 20 O. S., 68; *Harsh* v. *Clepper*, 28 O. S., 206; *Mims* v. *Mors*, 15 O. 568.

The statute of frauds is a rule of procedure and relates to the remedy. *Barr* v. *Chester*, 7 C. C. (N.S.), 333, affirmed 76 O. S. 630 and 77 O. S., 639. Such a contract made between plaintiff in error and the purchaser, through an agent, is voidable, but not void. *Barber* v. *Heed*, 10 C. C. (N.S.) 342, citing *Jefferson* v. *Dallas*, 20 O. S. 68.

A parol contract is enforcible unless the statute be pleaded by one of the parties. *Ogden* v. *Ogden*, 4 O. S., 191. The plea of the statute lies only in favor of a direct, not a collateral or privy after the contract has been fully complied with.

If Rohn had set up the statute after he received the balance of the purchase price, how much standing would he have had in court? Or, after he executed the deed, how much could his widow, whose estate would have been part of his, how much standing would she have had to defeat the title under which she claims. Such a defeat is personal to the parties. See 8 Am. and Eng. Ency. Law, 660, and citations *Mims* v. *Mors*, 15 Ohio, 568; *Lefferson* v. *Dallas*, 20 O. S., 68; 20 Cyc., 3306, and citations.

If plaintiff's claim be for what it would be, if established, a part of Rohn's estate, which he had contracted away before the inception of hers, how can she plead the statute? The original parties made the agreement and having complied with all the terms, by the execution of the deed, and payment of the balance she had nothing to say, the contract relating back to the original agreement, which was before the marriage with the plaintiff by the grantor. See the last two Ohio cases cited.

In *Lefferson* v. *Dallas*, 20 O. S. 74, the contract was by parol, only possession not changed, part payment not sufficient, but the parties executed their agreement, but before so doing a judgment creditor intervened, and claimed the right to set up the statute thereto, that the statute does not make parol contract void, but by withholding the contract on them, makes them voidable, at the will of either party, but neither can be compelled to set it up. The same principle is **made more emphatic in** *Fire stone* v. *Firestone*, 2 O. S., 455.

"If the husband before marriage sells his land by contract, either verbal or in writing, though he does not convey until after marriage, the widow is not entitled to dower." 10 Am. & Eng. Ency. 2d edition page 133. *Duke* v. *Huenkemier*, 48 L. R. A. (N.S.), 517.

After Rohn chose to complete his agreements in the face of the evidence as presented, closing with his deeds, the presumption arises that he at least regarded that contract as enforcible, and hence he, and all who claimed under him were precluded from denying them. It is not necessary that a contract for the sale of land, should be enforced by specific performance to bar the dower claim, if the vendor chose to perform its terms by conveyance even after the marriage.

Granting that not sufficient facts are shown to justify the conclusion that his contract was enforcible in either case, when Rohn chose to take his advanced payments and make his deeds, the whole series of transfers became consummated, in a contract proved under a statute of frauds, and a conveyance of lands relating back to the inception, that is the acceptance of the cash payment, or the first act of possession of the vendee. See case

of *Purcell* v. *Miner*, 4 Wall, 513 to 519, 2d, 3d and 4th syll., sustain the conclusion that these conditions were complied with first by payment of part, under condition that the title be perfected, second, by entry upon the lands by the vendee and working thereon, and followed by complete abandonment of possession by the vendor, and third, by making improvements and exercising other acts of ownership, coupled with reputation of the same, and fourth by subsequent ratification of the same by deeds. Referring to R. C. L., 544 to 545, it is proper to say, the doctrine of part performance has not been repudiated in Ohio. See citations above, especially when the parties themselves refuse or neglect to avail themselves of the plea of the statute of frauds. The acts of Spangler in building his share of the line fence, and Durham, Rohn's tenant, and others in considering him the owner were sufficient to shift the burden of proof, and coupled with the part payment, and afterwards followed by conveyance properly made, upon completion of the case to quiet the title certainly constitute a compliance with the terms of the statute, and establish a contract from the time the "dickering" about the sale took place.

In the Kuykendall case cited by Vail & Simpson's brief, page 32, note the language of the last paragraph tending to apply the case where vendor and his heirs are unable and fail, etc. In the case at bar the parties were able and did not fail, but went on and executed the conveyance. It is true that the evidence is not strong or specific as to what transpired before the marriage, and had Rohn refused to execute a deed to Spangler, it would not sustain an action for specific performance, but the palpable, indisputable fact of his subsequent conveyance in compliance with that contract or agreement is ever before us. The statute of frauds not being a rule of property, the necessary conclusion is that there must have been an agreement before Rohn married the plaintiff, which he held himself under obligation to, and did discharge.

The allegation of title in the procedure to perfect the abstract and covenants of seizin in the deeds and mortgage can not

need to be disputed by the defendant in any sense for the reasons stated above, that for the purpose of complying with these agreements and executing his conveyances for that purpose, Rohn was to all intents an unmarried man, because under the principle of equity he was completing a contract which had been made while he in fact was a single man, and those deeds relate back to that time.

The following authorities have been examined before the reading of the briefs filed in this case, but I notice that some of them are cited in the briefs and hence there may be some duplication of the argument.

In *Rane* v. *Roper*, 15 Fla., 121, the court says where an unmarried man makes a contract to convey his lands, and dies without making conveyance of the same, that after his marriage, the purchaser is entitled to a conveyance, dower free.

In *Chestnut* v. *Chestnut*, 15 Ill., App., 442, a father made a gift to his son for a piece of land, on condition that the son should live on and improve that land, which he did. The father promised a deed for the lands, but did not make it, and he married a second wife, and afterwards died without having made the deed. Held, that the widow was not entitled to dower in the land, the son in equity having acquired a right to specific performance.

*Stirns* v. *Smith*, 4 J. J. Marsh, 25 Ky., 64; 20 Am. Dec., 205, where a husband before marriage gives bond for the conveyance of land and put the purchaser in possession, his wife is not entitled to dower.

*Dean's heirs* v. *Mitchell heirs*, 27 Ky., 541, the husband under these circumstances, holds the legal title in trust for the covenantee, and his wife is not entitled to dower in this case. In this case possession had not been given.

*Oldham* v. *Sale*, 40 Ky., 76, where a husband during infancy executed a parol contract for the sale of land before marriage, and after marriage on becoming of age confirmed such contract, by a conveyance, his widow is not entitled to dower.

A case in 48 Ky., 295; 48 Am. Dec., 425, the court holds that where a husband previous to his marriage gives realty to his

child, who takes possession before the coverture, but receives a conveyance from the husband, afterwards the donor's widow is not entitled to dower therein.

*Culley* v. *Ray*, 57 Ky., 107, the court says, where the husband contracts to sell realty before his marriage, though he does not convey until after his marriage, the widow is not entitled to dower in the land. To the same effect a widow is not entitled to dower in land sold by the husband before marriage. *Moody* v. *Moody*, 3 Ky., Law Rep., 472. See *Eubank* v. *Eubank*, 7 Ky. Law Rep., 291, where the husband prior to marriage sells or in goods faith makes a gift of land by parol, and after marriage confirms it by conveyance the widow is not entitled to dower.

In the case of *Fennessey* v. *Fennessey*, 84 Ky., 519; 2d S. W. 158, it was held that where a man, possessed of a large estate, from $40,000 to $80,000, acquired largely through the skill of his first wife deceased pursuant to a promise made to her, conveys land worth $9,000 to three of his children, three days before his second marriage, such conveyance is held reasonable and if not in fraud of the second wife she is not entitled to dower.

· A contrary holding in *Dimonds* v. *Billingsley*, 2 Har. & G., in Maryland but in *Common* v. *Hall*, 3 Gil. & J., 398, the same court held that a husband having delivered possession before marriage, to his mother, the deeds executed by him, and his mother nineteen years later convey a title free of dower, that is they held his widow not entitled to dower.

To the same effect in 7 Md., 26, case of *Rawlings* v. *Adams*, a wife has no dower in land, which a husband contracted before his marriage to her, to convey to a daughter by a former marriage. A similar finding or holding is found in the case of *Beckwith* v. *Beckwith*, 61 Mich., 315, 28 N. W., 116. A contrary holding appears in 97 Mich., 375, but in this latter case the purchase money had not been paid, so that both the widow and the purchaser could be protected.

In the case of *Firestone* v. *Firestone*, 2 O. S., 415 the court says "where, before marriage with the claimant of dower, the husband, for considerations, partly good and partly valuable,

had agreed to convey certain holdings to his son, who paid the valuable consideration and took possession and after the marriage the conveyance was actually made, no right of dower attached as against the equity of the son.''

See also *Black* v. *Hoyt*, 33 O. S., 203, *Chapman* v. *Chapman*, 92 Va., 537, 24 S. E. 225, the court says a widow has no dower in land, which her husband had before coverture, orally contracted to sell to one who at once took possession, payment of part of the price, and who received a deed from the husband alone, after the marriage.

The case of *Madigan* v. *Walsh*, 22 Wis., 478, has been refered to in the briefs, and also in this opinion. It seems upon examination of that case, that the contract made by parol remains wholly unexecuted, and the widow is held entitled to dower, because the contract of sale is void. It is pertinent to notice that that case mentions the case of *Firestone* v. *Firestone*, 2 O. S., 415, and distinguishes between the statutes of Wisconsin and Ohio.

Dower attaches first to land of which the husband is seized as an estate of inheritance at any time during coverture. 2. To any interest in land by article of lease, or other evidence of claim at the time of his decease. See *Jawues* v. *Hamilton County Commissioners*, 1 Disn. 121; 3 O. Dec. 7; 2 Week. Law Gaz., 81.

The case of *Betts* v. *Wise*, 11 O. 219, does not apply unless there was an actual seizin of an estate of inheritance during coverture, and any such alienation or incumbrance of the property as would defeat the husband of his title by any means would also defeat the dower, and it is also true that if he entered into an arrangement for the sale of his land, afterwards married and felt bound to complete that arrangement, and did so by proper conveyance the effect of that conveyance would relate back to his original arrangement, and she would not be entitled to dower. See *Nichols* v. *French*, 83 O. S., 162; 93 N. E., 897, where a widow was endowed in the balance of the land after the mortgage was satisfied. See also *Kern* v. *Kern*, 15 C. C., N. S., 279; 34 O. C. C., 22, affirmed 87 O. S. 481, held that she

would only have dower in the balance after the liens, 102 N, E., 1126.

In the case in which the husband owned an equity at the time of his death the court says the widow's dower is measured by the husband's interest in the land, and can rise no higher. Same case.

In the case of *Derush* v. *Brown*, 8 Ohio, 412, she can not be endowed in lands in which her husband held the legal title in trust for others with no beneficial interest for himself at the time of his marriage, nor in lands the legal title to which was in the husband, but the equitable in another at the time of the marriage. See Firestone case, 2 O. S., 415.

There has been some discussion in briefs in this case concerning equitable conversion, and the opinions of the attorneys do not seem to harmonize either with each other or with the court in regard to the effect of that principle. It seems that the conclusion arises from a misunderstanding of the terms, rather than of the principle itself. According to Mr. Pomeroy "Equitable remedies" volume 2 or volume 6, of the entire work Section 838, the contract of purchase is defined thus: "The effect of a contract to purchase is very different at law and in equity. At law the estate remains, that of the vendor, and the money that of the vendee." It is not so here, the estate from the sealing of the contract is the real property of the vendee, it descends to his heirs, it is devisable by his will, and the question whose it is is not to be discussed merely between the vendor and the vendee, but may be discussed between the representatives of the vendee and of the vendor.

In Section 839, "the rights of the heirs and representatives of the vendor and vendee on the decease of either before title has passed in a valid contract, followed directly from the fundamental principle of equity, that in equity upon an agreement for the sale of lands the contract is regarded for most purposes, as if already specifically executed, and the purchaser becomes the equitable owner of the lands and the vendor of the purchaser's money."

It is argued however that this contract was not enforcible, and not valid, and upon the theory that Rohn could have avoided it at any time before he made his deeds; this argument must be answered by the fact that he did consider the contract binding, and did complete it by the execution of those deeds, and although the evidence is extremely scant, at least as to one part of the land, the delivery of those deeds certainly raises a conclusive presumption, that there was a valid contract, and their delivery at least consummated that contract. See Sections 845, 846 and 847 also 849 where there is a discussion concerning the rights of dower.

There is also a consideration of this principle in Pomeroy's Eq. Juris. 3d Edition, Sections 368, 371 and 372.

Section 105 is a discussion of the conditions of the property as governed by the rules of equity, and distinguishes principles of law as applied to the same situations.

At the bottom of page 111, the text contained applies to one of its fruitful principles, that what ought to be done is regarded as done. Equity says that from the contract even while yet executory the vendee acquired a real right, a right of property in the land, which though lacking a legal title, and therefore in equity only is none the less the real beneficial ownership, subject however to the liens of the vendor, as security of the purchase price as long as they remain unpaid. This interest in the land upon the death of the vendee descends to his heirs or passes to his devisees, and is liable to the dower of his widow, and the vendor still holds the legal title, but only as a trustee, and he in turn acquires an equitable ownership of the purchase money.

See volume 3, of the same work sections 1161, 1162, and 1163, where the discussion of options takes place. Also in Section 1261 the essential nature of such contracts is discussed.

Under these rules since the parties chose to comply with the terms of their agreement, the wives of the purchasers would have been entitled to dower, should they have died previous to the execution of the deeds, on condition of course, that the purchaser paid the balance of the purchase money, which if he

did not pay, a suit against Rohn by the representatives of the decedent purchaser or purchasers for the purchase money already paid in case the contract was not enforcible by specific performance would have put an end to the equitable interest, and the land would have remained his, and in such case the inchoate interest of his wife would have attached.

With these views of the situation it is found that Charles D. Leach is the owner in fee simple of all of the lands described in plaintiff's petition, free of any claim she makes for dower, and is entitled to have a decree setting this title at rest, against the same, and to recover his costs herein taxed.

The petition of the plaintiff will be dismissed, the answer and cross-petition of John Spangler will be dismissed for the reason that the title to the land of which he was a warrantor has not failed, and his executors and he are entitled to go hence with their costs, and the defense based on estoppel both in the amended answer and cross-petition of Charles D. Leach, and that of John Spangler, not having been sustained by sufficient evidence, is dismissed.

EASTMAN, Judge.